UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | **ORDER** |
| JUAN PERALTA, | 19 Cr. 818 (PGG) |
| Defendant. | |

PAUL G. GARDEPHE, U.S.D.J.:

    Defendant Juan Peralta is charged with conspiracy to distribute and possess with intent to distribute 280 grams and more of cocaine base and a quantity of powder cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) and (b)(1)(C).  (Indictment (Dkt. No. 2) Count One)

    Peralta was arrested, presented, and arraigned before Magistrate Judge Sarah Netburn on November 20, 2019.  (See Dkt. No. 9)  He was detained on consent without prejudice, and is housed at the Metropolitan Correctional Center ("MCC").  (Id.; May 15, 2020 Govt. Ltr. (Dkt. No. 48) at 1)  Peralta now seeks release on bail.[1]  (May 11, 2020 Def. Ltr. (Dkt. No. 46))  The Government opposes his request.  (May 15, 2020 Govt. Ltr. (Dkt. No. 48))  No trial date has been set, and the defense is currently reviewing discovery and contemplating pretrial motions.

**I.  LEGAL STANDARDS**

    The Bail Reform Act, 18 U.S.C. § 3142(g), directs a court to consider the following factors in determining whether pretrial release is appropriate:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

---

[1] Peralta has consented to having his bail application decided on the papers, and has thus waived his right to a hearing.  See May 17, 2020 Def. Ltr. (Dkt. No. 49) at 1.

> (2) the weight of the evidence against the [defendant];
>
> (3) the history and characteristics of the [defendant], including . . . the [defendant's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; . . . and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. . . .

18 U.S.C. § 3142(g).

In order for a defendant to be detained pending trial, the Government must demonstrate (1) by a preponderance of the evidence, that there is no condition or combination of conditions that will ensure the defendant's return to court; or (2) by clear and convincing evidence, that there is no condition or combination of conditions that will reasonably assure the safety of the community. See United States v. English, 629 F.3d 311, 319 (2d Cir. 2011) ("At all times, however, 'the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community,' and 'by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight.'" (citing United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)); United States v. Chimurenga, 760 F.2d 400, 403, 405 (2d Cir. 1985) ("The government has the burden of establishing defendant's dangerousness by 'clear and convincing evidence.' . . . The government's burden of proof on the question of risk of flight [for a pre-trial defendant] is not by clear and convincing evidence, but rather by a preponderance of the evidence. . . ."); United States v. Paulino, 335 F. Supp. 3d 600, 610 (S.D.N.Y. 2018) ("Regardless, in a presumption case, the Government still bears the burden of persuasion of demonstrating dangerousness by clear and convincing evidence and risk of

flight by a preponderance of the evidence." (citing English, 629 F.3d at 319)); see also 18 U.S.C. §§ 3142(e), 3142(f).

## II. THE PARTIES' ARGUMENTS

### A. Defendant Peralta

Peralta argues that he should be granted pretrial release because of (1) his mental and physical condition; (2) his lack of access to his attorney; and (3) risks associated with the COVID-19 pandemic. Peralta contends that he does not present a risk of flight or a danger to the community. (May 11, 2020 Def. Ltr. (Dkt. No. 46))

According to Peralta, his requests to be seen at the MCC for "depression and headaches . . . have been ignored," and "medical care at the facility has halted entirely." (Id. at 4-5) Peralta further argues that "[i]n addition to unhygienic living conditions, frequent movement between units at the MCC over the past several weeks promises to continue the spread of the virus." (Id. at 5)

Peralta also complains that "[f]or more than a month, [he] has borne a complete disruption of his right to counsel." (Id. at 7) Defense counsel reports that he has only been able to visit Peralta once since mid-February, and that he has had only "one opportunity to speak on the telephone with Mr. Peralta on April 24 for a limited time." (Id. at 8)

Finally, Peralta argues that his limited role in the charged conspiracy demonstrates "that he does not present a risk of flight or danger to the community . . . ." (Id. at 9) "As a lesser role participant, the fact that [he] could make telephone calls on release is of no moment. There is no proof that he coordinated distribution during the investigation. . . . He has no history of violence." (May 17, 2020 Def. Ltr. (Dkt. No. 49) at 1)

3

As to a bail package, Peralta proposes (1) release to a Middletown, New York residence, where he would live with his mother and his adult sister; (2) home confinement enforced by electronic monitoring; and (3) a personal recognizance bond in an unspecified amount signed by Peralta's two sisters, the fiancé of one of his sisters, and his father, all of whom are employed.  (May 11, 2020 Def. Ltr. (Dkt. No. 46) at 1)

### B. The Government

The Government opposes Peralta's application, arguing that (1) he poses a danger to the community and a substantial risk of flight; and (2) he "has no physical ailments that make him particularly susceptible to COVID-19."  (May 15, 2020 Govt. Ltr. (Dkt. No. 48) at 5)

According to the Government, Peralta worked for co-defendant Javier Janiel "selling crack cocaine to end users" as part of "a crew that sells narcotics in the vicinity of Thayer Street in northern Manhattan."  (Id. at 1)  Undercover officers purchased narcotics from Peralta on five occasions, all of which were video and audio recorded.  The Government has provided screenshots from two of these undercover buys; the screenshots show clear images of Peralta's face.  (Id. at 3-4)  Peralta was also "with Janiel during several of the undercover buys of crack cocaine in front of Janiel's apartment building at 2 Thayer Street."  (Id. at 4)

The Government further notes that Peralta committed the instant offense while on pretrial release for a felony charge of criminal possession of a firearm.  Moreover, in three criminal cases since 2014, courts have issued bench warrants for Peralta because of his failure to appear.  (Id.)  The Government further argues that home confinement will not adequately address the danger Peralta presents to the community, because "narcotics conspiracies are now easily conducted over the phone."  (Id. at 5)

4

As to the risk posed by the COVID-19 pandemic, the Government points out that Peralta alleges "no medical conditions that make him more susceptible to COVID-19." (Id. at 6)

As to Peralta's arguments about access to counsel, the Government states that "Peralta has been offered a plea agreement by the Government," and that "no trial date has been set." In the event that Peralta rejects the plea offer, he will have adequate time to prepare for trial. (Id.)

## III.   BAIL REFORM ACT ANALYSIS

### A.   Nature of the Offense Charged

Defendant Peralta is charged with conspiracy to distribute and possess with intent to distribute 280 grams and more of crack cocaine and a quantity of powder cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A) and (b)(1)(C). (Indictment (Dkt. No. 2))

The Government asserts that Peralta "sells crack cocaine to end users," and is part of "a crew that sells narcotics in the vicinity of Thayer Street in northern Manhattan." (May 15, 2020 Govt. Ltr. (Dkt. No. 48) at 1) Peralta sold crack cocaine to an undercover officer on five separate occasions between April 2019 and his arrest on November 20, 2019. (Id. at 1, 3-4)

Because of the large quantity of crack cocaine that was distributed as part of the charged conspiracy, Peralta faces a mandatory minimum sentence of ten years' imprisonment. See 21 U.S.C. § 841(b)(1)(A). Moreover, because of the nature of the drug conspiracy charge pending against Peralta, there is a presumption under 18 U.S.C. § 3142(e)(3)[2] that no condition

---

[2] 18 U.S.C. § 3142(e)(3) provides that, "[s]ubject to rebuttal by [a defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed –
   (A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.). . . ."

or combination of conditions will ensure Peralta's return to court and the safety of the community.

### B. Weight of the Evidence

As to the weight of the evidence against Peralta, it appears overwhelming. The Government proffers that undercover officers purchased crack cocaine from Peralta on five separate occasions, all of which were video and audio recorded. Moreover, the Government has offered screenshots from the videos that show clear images of Peralta's face. (May 15, 2020 Govt. Ltr. (Dkt. No. 48) at 3-4) As to the broader conspiracy, undercover officers purchased crack cocaine from Peralta's co-conspirator, Javier Janiel, on more than thirty occasions. (Id. at 1, 4)

### C. History and Characteristics of the Defendant

Peralta is 26 years old and was born and raised in New York City. At the time of his arrest, he was residing with his father in the Bronx. (PTS Rpt. at 2) He has never been employed. Peralta regularly uses marijuana and suffers from depression. (Id.)

As to criminal record, Peralta has a 2014 disorderly conduct violation; a 2018 misdemeanor conviction for criminal possession of stolen property; a 2018 misdemeanor conviction for criminal possession of a controlled substance; and a pending case for criminal possession of a loaded firearm, possession of a forged instrument, and criminal possession of marijuana. The pending case arises from an April 6, 2019 arrest. (Id. at 3-4) Courts have issued four bench warrants against Peralta in the past because of his failure to return to court.

There is a bench warrant outstanding against Peralta in connection with his April 6, 2019 firearms arrest. Moreover, Peralta allegedly committed the instant offense while he was

on pretrial release in the firearms case. (PTS Rpt. at 4; May 15, 2020 Govt. Ltr. (Dkt. No. 48) at 3-4)

### D. Danger to the Community

Peralta is charged with conspiring to distribute a large quantity of crack cocaine. This conduct presents a significant danger to the community.

\* \* \* \*

The Court concludes that the Government has demonstrated, by a preponderance of the evidence, that there is no condition or combination of conditions that can ensure Peralta's return to court if he is released on bail. Four bench warrants have been issued against Peralta in the past because of his failure to return to court. Moreover, Peralta allegedly committed the instant offense while on pretrial release in another case. Peralta also faces a ten-year mandatory term of imprisonment if he is convicted. Acknowledging the co-signers proposed by Defendant, these family members did not have sufficient suasion over Defendant to ensure that he returned to court and remained law abiding while on pretrial release in the past. The Court concludes that Peralta has not rebutted the presumption that no condition or combination of conditions will ensure his return to court if he is released on bail.

As to danger to the community, the Government must establish by "clear and convincing evidence" that there is no condition or combination of conditions that will ensure the safety of the community if the Defendant is released.

There is overwhelming and unchallenged evidence that Peralta was involved in the large-scale distribution of crack cocaine, including multiple video and audio-recorded transactions. Moreover, the fact that Peralta allegedly committed the instant offense while on pretrial release for a serious state firearms charge confirms that he is a danger to the community

and not susceptible to community supervision.  The Court concludes that the Government has met its burden, and that Peralta has not rebutted the presumption that detention is appropriate.  See 18 U.S.C. § 3142(e)(3)(A).

As to Peralta's argument that the COVID-19 pandemic and conditions at the MCC justify his release, he is 26 years old and has no medical conditions that would put him at a higher risk of contracting the coronavirus, or give him a worse prognosis if he contracts COVID-19.  Acknowledging the risk that the virus presents in an incarceratory setting, that risk does not – at this time – outweigh the risk of flight and danger to the community that Peralta presents.

As to Peralta's arguments about access to counsel, these concerns, while legitimate, do not justify his release.  This Court has not set a schedule for motions in this case, nor has any trial date been set, and Peralta has not articulated any specific prejudice resulting from his current difficulties in communicating with counsel.  Acknowledging that Peralta's access to counsel has been temporarily impeded as a result of the unprecedented challenges posed by the COVID-19 pandemic, his impeded access to counsel does not – at this time – outweigh the risk of flight and the danger that Peralta presents to the community.

## **CONCLUSION**

The Government has met its burden of demonstrating that there is no condition or combination of conditions that can ensure Peralta's return to court and the safety of the community if he is released on bail.  Accordingly, Peralta will remain detained pending trial.  The Court is cognizant of the risk to inmates presented by the current COVID-19 crisis, however.  See Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, No. 19-1778, slip op. at 26-27 (2d Cir. Mar. 20, 2020).  Accordingly, Peralta's application for pretrial release

is denied without prejudice to renewal in the event circumstances materially change.

Dated: New York, New York
　　　　May 18, 2020

SO ORDERED.

*[signature: Paul G. Gardephe]*

Paul G. Gardephe
United States District Judge